Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 8129 | **DATE** | 12/19/2001 |
| **CASE TITLE** | SEAN HARRIS vs. RIVER VIEW FORD, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Harris's petition for attorney's fees is granted in the amount of $14,552.50. This amount is calculated as follows: Norman - 1.3 hours x $225=$292.50 + Feofanov - 61.6 hours x $225=$13,860+Shugar - 3.4 hours x $100=$340+ Christensen - 1 hour x $60 = $60 for a total lodestar of $14,552.50.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 21 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 01 DEC 20 PM 3:06 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SEAN HARRIS,

    Plaintiff,

v.

RIVER VIEW FORD, INC., and
FORD MOTOR CREDIT CO.,

    Defendants.

No. 00 C 8129

Judge John W. Darrah

DOCKETED
DEC 21 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sean Harris (Harris), and defendants, River View Ford (River View) and Ford Motor Credit (Ford Credit), have separately settled the dispute between them. The parties agreed that River View would pay Harris's attorney's fees but could not agree on the amount of such fees. Subsequently, the parties agreed to have the Court determine the amount of attorney's fees.

Harris's attorneys seek a total of $19,760.50 in fees for a total of 88.2 hours of services provided by attorney Andy Norman (Norman) at the rate of $325 per hour, Dmitri Feofanov (Feofanov) at the rate of $225 per hour, Gregory Shugar (Shugar) at the rate of $150 per hour, and paralegal Stephanie Christensen at the rate of $60 per hour.

The party seeking attorney's fees bears the burden of proving the reasonableness of the hours worked and the claimed hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (*Hensley*). The starting point for determining the amount of reasonable fees is the number of hours reasonably expended on the case multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. This product is commonly referred to as the "lodestar". *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (*Spegon*). The court may then decrease or increase the lodestar amount by

considering a variety of factors, the most important of which is the "degree of success obtained". *See Hensley*, 461 U.S. at 434-36.

Harris's attorneys seek payment for 88.2 hours of service. This includes 83.5 hours for Feofanov. River View argues that this number of hours is excessive.

River View first alleges that 2.8 hours for time spent on class action allegations should not be awarded because the settlement provided no recovery on a class action basis and that little time was spent on such allegations. Harris's complaint did include class action allegations, and a motion to certify the class was filed by Harris. While the class was never certified and the settlement did not include a recovery based on the class action, the minimal time spent on the claim was reasonable.

River View also argues that it should not be required to pay for time Harris's attorney billed that concerned the co-defendant Ford Credit.

On January 25, 2001, Harris's counsel appeared before the Court and learned that Ford Credit was supposed to have informed counsel that the appearance was not necessary. That same day, counsel drafted a motion for fees against Ford Credit for failing to notify counsel that the appearance was not required. The motion was withdrawn on February 7, 2001, at which time a briefing scheduled for both defendants' motions to dismiss was put into place.

Harris was not responsible for Harris's counsel's appearance on January 25, 2001, and was not included in the motion for fees. Accordingly, that time, a total of 4.2 hours, is not properly accessed against River View and is subtracted from the total number of billable hours.

River View next argues that the 23.1 hours requested for seven court appearances is excessive. A review of the billing statement indicates that counsel billed from 2.2 to 4.5 hours for each court appearance, including travl time. Feofanov argues that the time is reasonable and that

2

local counsel, Norman, did not have the time to appear for court call because of his own busy schedule.

A court should exclude from the initial fee calculation hours that were not reasonably expended, including those that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434.

Feofanov billed 23.1 hours for seven court appearances for an average of 3.3 hours per court call. Each court call was for a status call, no hearings were held. A review of River View's counsel's time sheets indicate that River billed for court appearances from 0.20 hours to 1.4 hours. An average court call for status of 3.3 hours is excessive and was otherwise unnecessary. Harris had local counsel that should have been able to appear for at least some of the court calls. If local counsel was too busy for additional caseloads, alternative local counsel that had the time to participate in the case could have been obtained. Therefore, the hours sought for court appearances will be reduced to 1.4 hours per call, for a total of 8.4 hours (1.4 hours x 6 court appearances (as noted above, the January 25, 2001 court appearance should not be accessed against River View)). This figure is used as it is a reasonable amount of time for such status appearances and represents the largest amount of time opposing counsel billed for the same court appearances.

River View also argues that counsel should not be compensated for the hours to amend the complaint because such amount of time is excessive.

Harris's attorney spent 4.5 hours drafting the original complaint. Subsequently, counsel spent 2.7 hours drafting the first amended complaint, 3.7 hours drafting the second amended complaint, and 3.3 hours drafting the third amended complaint. A review of the original complaint and the subsequent amended complaints indicates that the amended complaints, while containing additional

3

counts, include the same factual basis and that the counts from the previous complaint are unchanged or substantially similar. Harris's attorney also refers to the complaint as a "form complaint", indicating that he routinely has similar causes of actions and that revisions should not be difficult. Furthermore, as noted in this Court's Memorandum Opinion and Order, Harris's complaint failed to properly plead separate counts for each distinctive statutory claim as required by Federal Rule of Civil Procedure 10(b). This error is consistent in all four complaints. Lastly, counsel avers that he is a specialist in consumer law cases so the addition of one or two counts and minor changes should not take near the same amount of time as drafting the original complaint.

The Court finds that a reasonable amount of time for an experienced attorney with Feofanov's experience to spend on the amended complaints that were substantially similar to the previous complaint is half the time it took to draft the original complaint. This figure is reasonable because, at a minimum, half of the information, facts, and allegations, were already present and did not change. Therefore, the total of 9.7 hours for amending the complaints is adjusted to a total of 6.75 hours (4.5/2 hours x 3 amendments).

Based on the above findings, the total reasonable billable hours for Feofanov is adjusted to 61.6 hours. River View does not contest the other attorneys and paralegal total hours, and the Court finds that the time expended by these individuals was reasonable and necessary.

After determining the reasonably expended hours, a court must determine a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The reasonable hourly rate is based on the "market rate" for the services rendered. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). Counsel seeking fees has the burden of proving the market rate. Once counsel establishes his or her rate, the burden shifts to the opposing party to demonstrate why the rate should be lower.

4

*Spegon*, 175 F.3d at 554.

An attorney's market rate is the rate that lawyers of similar experience and ability in the community normally charge their paying clients for the same type of work. *Spegon*, 175 F.3d at 555. Counsel's actual billing rate for comparable work is presumptively appropriate for use as the market rate. If this cannot be determined, the next best evidence of counsel's market rate is evidence of rates that similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards that attorneys have received in similar cases. *Spegon*, 175 F.3d at 555.

Harris's Rule 54.3 Joint Statement indicates that Norman seeks an hourly market rate of $325 per hour. In his declaration, Norman states that he believes that $310 per hour is appropriate market rate because his average hourly rate is more than $288 on cases outside his area of expertise, which is consumer litigation, and because he has extensive and unique experience in consumer litigation. The declaration indicates Norman's current hourly rate for paying clients ranges from $310 to $225; there is no indication that any of Norman's present cases involve consumer litigation.

Norman further supports his requested rate through the affidavit of Michelle Weinberg, an attorney licensed in the State of Illinois. Weinberg has been practicing exclusively in the area of consumer protection for eight years; and, while in private practice, he charged a rate of $225 per hour. He avers that this rate was comparable to or lower than rates charged by other consumer litigation attorneys in the Chicago area. He also opines that $310 is reasonable for Norman in light of Norman's qualifications and expertise.

The Affidavit of Larry Smith (Smith) is also attached to support the requested rate. Smith is the managing attorney of the consumer fraud department of a Chicago law firm and has been licensed to practice law since 1993. In July 2000, he billed at the rate of $190.00 per hour.

River View argues that the appropriate market rate for Norman is $185, as found in a consumer litigation case, *Fogle v. William Cheverlot*, 99 C 5960 (*Fogle*). In February 2001, another Northern District Court Judge found that Norman's sought rate of $310 was unreasonable and that $185 was the reasonable rate.

Here, Norman has provided a range of his billing rates; however, the examples provided do not indicate that they are consumer protection litigation. The other counsel's market rates provided by Norman do not support the rate of $325 or $310. While Norman has more experience than the other counsel, such experience does not justify $100 per hour more than others engaged in the same type of litigation. Furthermore, Norman has been awarded only $185 in a similar case, and other judges in this district have found reasonable hourly rates for attorneys practicing this type of litigation to be in the $150 to $190 per hour range. *See Messana v. Mercedes-Benz of North America*, 2000 WL 988163 (N.D.Ill.); *American Security Mortgage v. Mercedes-Benz of North America*, 1998 WL 70609 (N.D.Ill.).

Based on the appropriate factors presented by the parties, Norman's reasonable hourly rate in this case should be no greater than $225. This rate represents a rate that Norman charges paying clients, is at the high end of rates for attorneys practicing similar litigation, and consistent with other rates awarded in similar cases.

Feofanov seeks an hourly rate of $225. River View argues that $125 is the appropriate rate for Feofanov.

In support of this rate, Feofanov provides his resume, which indicates that he has been licensed since 1994, began litigating in 1996, and became a partner in his present Naperville firm in 2001. He also included the affidavit of James Wilber, an employee of a management consultant

6

firm to law firms. He avers that Feofanov's rate of $225 is toward the upper end of the market based on a survey he conducted, but it is well within the range he would expect "for such a narrow speciality for a lawyer with his experience." Wilber has not practiced law in several years and has never practiced as a licensed attorney in Illinois.

Based on the affidavits and declarations above, including those discussed for Norman, and the Court's recognition that Feofanov was the driving force behind this case, a reasonable hourly rate of $225 is appropriate for Feofanov.

Shugar seeks an hourly rate of $150. River View argues that $100 per hour is the proper rate. River View does not contest the number of Shugar's hours (3.4).

Shugar has not provided anything to support his hourly rate or to refute River View's argument that $100 is the proper rate. Therefore, the Court finds that $100 is the proper hourly rate for Shugar. *See Spegon*, 175 F.3d at 554 (counsel seeking fees has the burden of proving the market rate).

Following the lodestar determination, a court may adjust the award in light of plaintiff's 'level of success'. *Spegon*, 175 F.3d at 557 (citations omitted). In a case involving a single claim or related claims, a court must ask whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, 461 U.S. at 434. In doing so, a court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435. If the plaintiff has achieved only partial or limited success, the lodestar may be an excessive amount. In such a case, the court, in its discretion, may reduce the modified lodestar amount to reflect the degree of success obtained. *Hensley*, 461 U.S. at 436-37.

7

In the instant case, Harris's Third Amended Complaint sought equitable relief, actual damages, statutory damages, and punitive damages for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*.V; violations of the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq*. (ICFA); violations of the Illinois Motor Vehicle Retail Installment Sales Act, 815 ILCS 375/1 *et seq*. (IMVRISA); violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.; violations of the Illinois Credit Services Organization Act, 815 ILCS 605/1 *et seq*.; common law fraud; violations of the the Illinois Commercial Code, 810 ILCS 5/1 *et seq*.; and violations of the Motor Vehicle Information and Cost Savings Act, 49 U.S.C. § 32701 *et seq*. All of the claims were based on a single automobile purchase by Harris from River View. Subsequently, two of the IMVRISA claims and two of the ICFA claims were dismissed. The settlement reached between Harris and River View awarded Harris $1,000 and reasonable attroney's fees.

The $1,000 recovered by Harris is less than the recovery he sought. He did not receive equitable relief; and any amount of money received over the actual damages, apparently the $800 down payment on the automobile, is minimal. However, the purpose behind awarding attorney's fees in suits alleging violations of consumer protection statutes is to insure that suits are still brought although the amount of the damages and/or award may be limited. *See In re Pine*, 705 F.2d 936, 938 (7th Cir. 1983 ("Congress must have known that you cannot prosecute a claim for $1,000 ... without incurring more than $1,000 in legal fees..."); *Hannon v. Speciality Nat'l Bank*, 537 F.2d 327, 328 (9th Cir. 1976) (purpose of granting attorney's fees is to facilitate private enforcement of the TILA); *see also*, Senate Report - No. 93-151, 93rd Congress, First Session, pp 23-24 ("It should be noted that an attorney's fee is to be based upon actual time expended ... This requirement is designed to make the pursuit of consumer rights ... economically feasible.")

In light of the above factors, a decrease in the lodestar is not appropriate.

Lastly, River View argues that no amount over $15,800 should be considered because at the time of the settlement, the estimated, and non-agreed to, attorney's fees was identified as $15,800.

River View's argument lacks merit. The settlement agreement that includes a statement of the estimated attorney's fees does not state that the $15,800 is the correct or maximum amount sought, limiting the amount the Court can consider.

For the reasons stated above, Harris's Petition for Attorney's Fees is granted in the amount of $14,552.50. This amount is calculated as follows: Norman- 1.3 hours x $225 = $292.50 + Feofanov - 61.6 hours x $225 = $13,860 + Shugar - 3.4 hours x $100 = $340 + Christensen - 1 hour x $60 = $ 60 for a total lodestar of $14,552.50.

Dated: 12-19-01

JOHN W. DARRAH
United States District Judge